JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
L.T., individually, and on behalf of R.J
Lansdale, PA 19446

**(b)** County of Residence of First Listed Plaintiff   Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Scott K. Johnson , THE LAW OFFICES OF ERIC A. SHORE
2 Penn Center, 1500 JFK Blvd Suite 1240, Philadelphia, PA 19102
(267) 546-0124

## DEFENDANTS
North Penn School District
401 E Hancock St
Lansdale, PA 19446

County of Residence of First Listed Defendant   Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☒ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
20 U.S.C. § 1400 et seq.
Brief description of cause:
Special Education

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
08/07/2018

SIGNATURE OF ATTORNEY OF RECORD
*Scott K. Johnson*

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: __Lansdale, PA 19446__

Address of Defendant: __401 E Hancock St, Lansdale, PA 19446__

Place of Accident, Incident or Transaction: __401 E Hancock St, Lansdale, PA 19446__

---

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __8/7/2018__    _Scott K. Johnson_    __PA 85024__
                  *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

CIVIL: (Place a √ in one category only)

**A.   *Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☒ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify): _____*

**B.   *Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify): _____*

---

ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, __Scott K. Johnson__, counsel of record *or pro se plaintiff*, do hereby certify:

- ☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- ☐ Relief other than monetary damages is sought.

DATE: __8/7/2018__    _Scott K. Johnson_    __PA 85024__
                  *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| L.T., individually, and on behalf of R.J | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| North Penn School District | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (✓)

| | | |
|---|---|---|
| 8/7/2018 | Scott K. Johnson | L.T., individually, and on behalf of R.J |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (267) 546-0124 | (215) 944-6124 | scottj@ericshore.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| L.T., individually, and on behalf of R.J., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Civil Action No. |
| North Penn School District, | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

1.      This action is brought under the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and Title II of the Americans with Disabilities Act ("ADA").

2.      Plaintiff L.T. ("Parent"), individually and on behalf of her son, R.J. ("Student"), sues Defendant North Penn School District ("District"), appealing from a Pennsylvania Special Education Hearing Officer decision dated July 24, 2018. Parent seeks a residential educational placement for Student upon the upcoming discharge from a residential treatment facility, which roughly corresponds with the upcoming 2018-2019 school year. The hearing officer did not rule on the substance of  the Parent's due process claim. Instead in response to the District's motion to dismiss, the hearing officer dismissed the complaint, citing two defects: (a) ripeness and (b) proper party status, holding that Parent's request for a placement was premature and the Parent's home district (i.e., North Penn) was not the proper party.

**JURISDICTION AND VENUE**

3.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and

20 U.S.C. § 1415(i)(3).

4.      Venue is proper under 28 U.S.C. § 1391(b).

5.      Parent has thoroughly exhausted her administrative remedies.

**PARTIES**

6.      L.T. is R.J.'s mother ("Parent"). She resides in Lansdale, Pennsylvania.

7.      R.J. ("Student") is a student with autism and intellectual disability.

8.      North Penn School District ("District" or "North Penn") is the local educational

agency ("LEA") under the IDEA. 20 U.S.C. § 1401(19).

9.      Because Parent resides within North Penn's boundaries and Student would reside

with Parent in North Penn once he is discharged from the residential treatment facility, North

Penn is his LEA and is responsible for his educational programming.

**STATUTORY AND REGULATORY BACKGROUND**

10.     Congress enacted the IDEA to "ensur[e] children with disabilities and the families

of such children access to a free and appropriate public education and [to] improv[e] educational

results for children with disabilities." 20 U.S.C. § 1400(c)(3).

11.     The IDEA and its implementing regulations, 34 C.F.R. Part 300, *et seq*., require

LEAs that receive IDEA funds to provide school-age residents who have disabilities a free and

appropriate public education ("FAFE").

12.     The IDEA requires LEAs to develop, review, and revise an Individualized

Education Program ("IEP") for each child with a disability. 20 U.S.C. § 1412(a)(4). IEPs must

provide services and supports that afford children FAFE. A school district must assess a child's

2

specific needs, including his socio-emotional, academic, and functional needs, and offer an IEP that takes into account the assessment. The LEA must ensure that the child is assessed in all areas related to the suspected disability, including, if appropriate, health, vision, hearing, social and emotional status, general intelligence, academic performance, communicative status, and motor abilities.

13.    To assure that an eligible child receive FAPE, 34 C.F.R. § 300.17, an IEP must be reasonably calculated to yield meaningful educational benefit to the student. *Bd. of Educ. v. Rowley*, 458 U.S. 176, 187-204 (1982). "Meaningful benefit" means that a student's program affords the student the opportunity for "significant learning," *Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 247 (3rd Cir. 1999), not simply de minimus or minimal education progress*, M.C. v. Central Reg. School Dist.*, 81 F.3d 389, 397 (3rd Cir. 1996). Each child's IEP must aim "to enable [him] to make progress appropriate in light of [his] circumstances." *Endrew F. v. Douglas Cty. Sch. Dist.*, 137 S. Ct. 988, 999 (2017). The IEP must be "constructed only after careful consideration of" the child's circumstances—and it must be "appropriately ambitious in light of [those] circumstances," providing the child "the chance to meet challenging objectives." *Id.* at 999-1000.

14.    For a student such as R.J. with severe communication and behavioral needs, "meaningful benefit" requires a residential component for the delivery of his IEP in order to allow him to be available for instruction. In such cases, the provision of educational services with a residential component is necessary for the delivery of FAFE for the student.

15.    Under *Kruelle v. New Castle Cty. School Dist.*, 643 F.2d 687, 694 (3d Cir. 1981), the fact that a residential placement may provide for other needs, such as behavioral health services, does not necessarily negate its appropriateness, or necessity, for the provision of FAFE.

IDEA envisions that a residential setting, where necessary for the delivery of FAPE, must be provided to a student: "If placement in a public or private residential program is necessary to provide special education and related services to a child with a disability, the program, including non-medical care and room and board, must be at no cost to the parents of the child." 34 C.F.R. § 300.104.

16.     Under *Kruelle*, the Court must determine "whether full-time placement may be considered necessary for educational purposes, or whether the residential placement is a response to medical, social or emotional problems that are segregable from the learning process." *Kruelle*, 642 F. 2d at 693. Where a Parent claims that a student's myriad of difficulties are not segregable from the learning process, the Court must examine the "claimed inextricability of medical and educational grounds for certain services does not signal court abdication from decision making in difficult matters. Rather, the unseverability of such needs is the very basis for holding that the services are an essential prerequisite for learning." *Id.* at 694. In short, genuine—albeit difficult—analysis is required to determine if the Student's medical and educational needs are inextricably intertwined.

17.     While *Kruelle* recognized the potential slippery slope that "ultimately any . . . medical aid can be construed as related to a child's ability to learn." *Id.* at 694. The court addressed this concern by noting that the "statutory language requires courts to assess the link between the supportive service or educational placement and the child's learning needs." *Id.* But *Kruelle* side-steps this concern, noting that the "relevant question in the present case is whether residential placement is part and parcel" to the provision of FAPE for the Student. *Id.*

18.     In the rare and unusual cases of children with such severe autism and intellectual disabilities as Student, where a student's educational and behavioral challenges are inextricably

intertwined, meaningful educational progress is only possible in a highly structured, residential educational placement.

19.     In reviewing a hearing officer decision, this Court conducts a modified de novo review. It must give due weight to the hearing officer's factual findings, but it reviews de novo the hearing officer's legal conclusions.

### STATEMENT OF FACTS

20.     Student is currently sixteen years old and is gravely disabled, with a diagnosis of severe autism and intellectual disability. Student is unable to communicate verbally (i.e., non-verbal) and requires continuous supervision and close hand-over-hand assistance to ensure his health and safety. Student is unable to perform any of the activities of daily living without close and constant supervision and engages of a variety of challenging behaviors that are self-injurious, dangerous or harmful to others, and involve non-trivial property damage.

21.     Student currently resides at the residential treatment facility ("RTF") of the Melmark School, located in Berwyn, Pennsylvania. Student currently attends the day school at the Melmark School ("School") while simultaneously residing in the RTF program at the Melmark School. The School and RTF are located on the same campus and function in a comprehensively, interrelated educational and behavioral residential program. Student is nominally in tenth grade at the School.

22.     Because Student's current placement in the Melmark RTF is funded by medical insurance through Pennsylvania Medical Assistance, Student's placement in the RTF program is based on a determination of medical necessity by the behavioral health administrator, Magellan Behavioral Health of Pennsylvania ("Magellan"). Magellan notified Parent that Student would be

discharged from the Melmark RTF in late August 2018 because it had determined that the RTF level of care would no longer medically necessary.

23.     In light of Student's upcoming discharge from RTF, on March 29, 2018, Parent requested in writing that the District provide a residential placement for educational programming for Student (i.e., a "24-hour/7-day IEP") when he is discharged from the Melmark RTF in late August, explaining that, even though Student will be released from the RTF program, an around-the-clock residential educational placement would be the appropriate future placement.

24.     In her March 2018 written request to District, Parent explained the specific basis of her request for a "24-hour/7-day IEP," stating that:

> In order to continue to make meaningful progress with his educational program, [student] still requires a highly structured residential learning environment for his instructional programming both in-class and in his residence that uses Applied Behavior Analysis (ABA) methodology that is implemented by properly trained and supervised ABA counselors. With this email, I request that North Penn School District provide [Student] with this 24-hour/7-day IEP in a residential educational setting that uses highly structured ABA methodology during all waking hours, in class and in the residence.

25.     After waiting many months for a response from the District to her March 2018 request, on July 9, 2018, Parent met with representatives of the District, who denied her request for a "24-hour/7-day IEP"—that is, a request for a placement for Student that provides "an a residential educational setting that uses highly structured ABA methodology during all waking hours, in class and in the residence."

26.     Following an the July 9th IEP meeting, the District issued a Notice of Recommended Education Placement ("NOREP") that refused to provide for an educational residential placement, stating that "The IEP team discussed residential placement but determined that it is reasonable to anticipate that [Student] will make meaningful progress toward his IEP

goals while receiving instruction during a traditional school day, albeit in an approved private school that is highly-tailored to meet his needs." (A copy of the NOREP is attached as Exhibit A.)

27.     On July 13, 2018, Parent filed a due process complaint challenging the District's denial of Parent's request for a residential education placement for Student upon RTF discharge. (A copy of the due process complaint is attached as Exhibit B.) The Pennsylvania Office of Dispute Resolution designated this Due Process Complaint as ODR File No. 20966-18-19. Also, the Pennsylvania Office of Dispute Resolution ("ODR") assigned Dr. Linda Valentini as the Hearing Officer for this complaint.

28.     On July 23, 2018, the District filed an Answer and Motion To Dismiss ("MTD") Parent's complaint. (A copy of the District's Answer and Motion to Dismiss is attached as Exhibit C.)

29.     In its Motion to Dismiss, the District argues for a narrow interpretation of 24 P.S. § 13-1306 ("Section 1306") and related administrative guidance to deny the Parent the opportunity to challenge the proposed IEP. Using this narrow and overly-restrictive interpretation of Section 1306, the District attempts to frustrate and prevent Parent from challenging the District's proposed IEP upon discharge from the RTF.

30.     The District latches on to the designation of the Marple Newtown School District as the "Resident District" under the Section 1306 protocol, and claims that "North Penn has (and continues) to serve as the resident district in this case, while Marple Newtown has (and continues)to serve as the host district in this case." MTD, at 3. The District contends that as

> the Student does not reside with his parent at this time . . . there is no nexus that compels non-LEA North Penn to act. If the Student does return home, the District does not dispute the fact that it will once again become the Student's LEA, but it

does dispute the assertion that the Student must be immediately offered a residential placement as a matter of FAFE from the outset.

MTD, at 3-4.

31.    The District acknowledges the heart of the problem in this dispute:

It will likely be argued that a parent whose child is being educated by a host district in a Section 13-1306 scenario should have the right to challenge an IEP, or lack thereof, as the case may be from the resident district because the absence of that right could cause an inappropriate program and/or placement to be in effect upon the transfer of LEA responsibility for the host district to the resident district.

MTD, at 4. The District's argument continues, stating that even though an "inappropriate program and/or placement" may cause irreparable harm to the Student, as is expected in this case, the District contends nothing can be done and analogizes merely the present scenario to that of one involving a student transferring from one state to another. MTD, at 4.

32.    The District claims "North Penn cannot be compelled to offer a placement of any sort to the Parent until it is required to offer a FAFE," claiming the matter is "unripe for dispute." MTD, at 5. The District maintains the inconsistent position that it can engage in the IEP process but not be subject to Parent's challenge through a due process complaint, contending:

[W]hen it was informed that the Student would likely be discharged from . . . RTF at some future date, possibly in August of 2018, North Penn, acting out of an abundance of caution and beyond its legal obligations, conducted a revaluation and held an IEP team meeting to develop the program that would be made available upon the Student's return to having North Penn serve as his LEA . . . . [T]he fact that North Penn has developed an IEP in anticipation that the Student will likely become its responsibility to educate on a future date does not impart upon the Parent the legal authority to challenge that IEP through a due process hearing.

MTD, at 5. The District has argued, in essence, that it can use the IEP process to plan and implement an IEP that the District seeks, but the Parent cannot bring a due process complaint to challenge to the proposed placement.

8

33.     On July 24, 2018, Hearing Officer Valentini adopted the District's reasoning in its

MTD and held that at "the present time the District of Residence [North Penn] is not Student's

LEA, and it is not under any current legal obligation to propose much less guarantee a placement

for Student. Likewise I cannot find a prospective violation of FAPE and order a prospective

placement." (A copy of the Hearing Officer's Decision is attached as Exhibit D.)

## COUNT I

34.     Parent incorporates the above and below paragraphs as though fully set forth

herein at length.

35.     The IDEA, Section 504, the ADA, and their implementing regulations require that

students with disabilities be provided FAPE.

36.     District violated Student's right to FAFE. District has refused Parent's request for

a residential educational placement. Therefore, District failed to provide Student with FAPE

under the IDEA.

37.     Parent filed a due process complaint against District School, alleging a denial of

FAPE arising from District's refusal to provide a residential educational placement.

38.     The FAPE-based claims are ripe, and the North Penn School District is the proper

district to answer Parent's due process complaint. Parent's FAPE-based claims against North

Penn were raised correctly before ODR.

39.     "Prospective" IEP planning is routinely carried out in special education under the

IDEA without stripping the parents of the ability to challenge a school district's proposed IEP

through the due process complaint procedures. Two examples of routine "prospective" IEP

planning subject to challenge through a due process complaint are (a) transition planning from

early intervention programming to school-age kindergarten, 20 U.S.C. § 1419, and (b) extended school year ("ESY") planning for summer instructional programming, 34 C.F.R. § 300.106.

40.     By definition, IEP planning is "prospective" in nature and to deny Parent the right to challenge a proposed IEP as unripe on this basis violates the IDEA, which provides an "opportunity for any party to present a complaint . . . with respect to ***any*** matter relating to the identification, evaluation, or ***educational placement*** of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A)(emphasis added).

41.     North Penn's rejection to the Parent's request is a specific and concrete decision that will affect the Student's right to FAPE, and there is a ripe and genuine controversy on whether a residential educational placement is necessary for FAPE.

42.     Hearing Officer Valentini erroneously determined that the FAPE claims are not ripe and dismissed the due process complaint.

43.     Hearing Officer Valentini's decision prejudiced Student.


WHEREFORE, Parent respectfully requests that this Court reverse Hearing Officer Valentini's decision and remand this matter to ODR, award Parent's reasonable attorney's fees

and litigation costs related to this matter, and grant any other relief that this Court may deem appropriate.

RESPECTFULLY SUBMITTED:


DATED:  August 7, 2018               LAW OFFICES OF ERIC A. SHORE, P.C.

                                     BY:  /s/ Scott K. Johnson
                                     Scott K. Johnson (Pa. Id. 85024)
                                     Two Penn Center
                                     1500 JFK Boulevard, Suite 1240
                                     Philadelphia, PA 19102
                                     (267) 546-0124
                                     scottj@ericshore.com

                                     Attorneys for Plaintiff L.T., individually, and on
                                     behalf of R.J.,

11

# E X H I B I T   A



E X H I B I T   A

North Penn School District
Department of Student Services
401 East Hancock Street
Lansdale, PA 19446
Phone: 215-368-0400    ~    Fax: 215-855-6926
Web Address: www.npenn.org

NOTICE OF RECOMMENDED EDUCATIONAL
PLACEMENT/PRIOR WRITTEN NOTICE (NOREP/PWN)                    School Age

Child's Name: ████████████████████
Date Sent (mm/dd/yy): 7/23/2018

Name and Address of Parent/Guardian/Surrogate:


┌─────────────────────────────────┐
│        For LEA Use Only:         │
│      Date of Receipt of signed   │
│            NOREP/PWN             │
│                                  │
└─────────────────────────────────┘

Dear ████████████████

This is to notify you of the Local Education Agency's (LEA's) action regarding your
child's educational program.

1. Type of action taken:

☐ Proposes initial provision of special education and related services (For this
   action, the school may not proceed without your written consent in Section 8 of
   this document)

☐ Refusal to initiate an evaluation (Must issue Procedural Safeguards Notice)

☑ Proposes to change the identification, evaluation or educational placement of the
   child or the provision of a free appropriate public education (FAPE)

☐ Refusal to change the identification, evaluation or educational placement of the
   child or the provision of a free appropriate public education (FAPE)

☐ Change of placement for disciplinary reasons (Must issue Procedural Safeguards
   Notice)

☐ Due process hearing, or an expedited due process hearing, initiated by LEA

☐ Graduation from high school

☐ Exiting special education

☐ Exiting high school due to exceeding the age eligibility for a free appropriate
   public education (FAPE)

☐ Extended School Year (ESY) services

☐ Response to request for an independent educational evaluation (IEE) at public
   expense

☐ Other

2. A description of the action proposed or refused by the LEA:

┌────────────────────────────────────────────────────────────────────────────────┐
│ It is recommended that ████ receive full time autistic support services at Melmark │
│ School as outlined in the attached IEP.                                           │
└────────────────────────────────────────────────────────────────────────────────┘

3. An explanation of why the LEA proposed or refused to take the action:

October 2014

> Melmark School represents the least restrictive environment for Ryan, incorporating the principles of applied behavior analysis, verbal behavior, and intensive teaching, and pre-vocational opportunities.

4. A description of other options that the IEP team considered and the reasons why those options were rejected. If the action proposed or refused is in regard to educational placement, options considered must begin with the regular educational environment with supplementary aids and services (information about supplementary aids and services is available on the PaTTAN website at www.pattan.net):

| Options Considered | Reason for Rejection |
|---|---|
| General education with supplementary aids and services in home school. | [REDACTED] requires direct, explicit teaching of skills in communication, functional academics, and behavioral supports that are beyond the scope of the general education curriculum in order to meet the outcomes identified in the measurable annual goals section of this IEP. |
| North Penn High School Full-Time Autistic Support | |
| Educational and Residential programming at Melmark | |
| | The team discussed that while the program could be implemented at North Penn High School, [REDACTED] would need a structured transition plan. Due to the anticipated changes to [REDACTED] living environment, the team determined that it would be appropriate to maintain his educational setting at The Melmark School so as to avoid multiple transitions occurring simultaneously. |
| | The IEP team discussed residential placement but determined that it is reasonable to anticipate that Ryan will make meaningful progress toward his IEP goals while receiving instruction during a traditional school day, albeit in an approved private school that is highly-tailored to meet his needs. |

5. A description of each evaluation procedure, assessment, record or report used as a basis for the proposed action or action refused:

> Parent and teacher Input, Re-evaluation report, comprehensive review of documentation from his current placement, IEP team discussion, input from Melmark residential programming

6. A description of other factors that were relevant to the LEA's proposal or refusal:

> None at this time.

7. The educational placement recommended for your child is (State the amount and type of special education supports, e.g., Itinerant Learning Support, Supplemental Autistic Support, Full-Time Emotional Support):

| Name | Type of Service | Location | Projected Beginning Date | Anticipated Duration |
|---|---|---|---|---|
| Autistic Support | Full-time | Melmark | 08/20/2018 | 07/07/2019 |

Curtis Dietrich                    *Curtis R. Dietrich*                    7/23/2018

October 2014

Child's Name: ▮▮▮▮▮▮▮▮▮    ID:   153267

School District Superintendent/Designee     Signature     Date
        charter School CEO                                     (mm/dd/yy)

You have rights and protections under the law described in the *Procedural Safeguards Notice*. If you need more information or want a copy of this notice, please contact:

Name and Title:   Juliet Matje, Supervisor of Special   Phone:   215-853-1085
                   Education

Email Address:   matjeje@npenn.org

8. PARENTAL CONSENT
Directions for *Parent/Guardian/Surrogate*: Please check one of the options, sign this form, and return it within 10 calendar days. In circumstances when this form is NOT completed and parental consent is NOT required, the school will proceed as proposed after 10 calendar days.

[   ] I request an informal meeting with school personnel to discuss this recommendation.

[   ] I approve this action/recommendation.

[   ] I do not approve this action/recommendation.* My reason for disapproval is:

 

I request (Contact the Office for Dispute Resolution at 800-222-3353 for information on Mediation and Due Process Hearing):

[   ] Mediation

[   ] Due-process Hearing

* Except for placement in an interim alternative educational setting due to drugs, weapons, or serious bodily injury (§300.530(g), §300.530(i), and §300.531), if you do not approve the action/recommendation, your child will remain in the current program/placement only if you request a due process hearing or mediation through the Office for Dispute Resolution. If you do not request Due Process or Mediation through the Office for Dispute Resolution, the LEA will implement the action/recommendation.

SIGN HERE:

Parent/Guardian/Surrogate Signature        Date (mm/dd/yy)        Daytime Phone

PLEASE RETURN THIS ENTIRE FORM TO:
Name:        Juliet Matje
Address:     401 E. Hancock Street
             Lansdale PA 19446

Attached are state and local resources you can consult to help you understand your rights and how the special education process works.

For help in understanding this form, an annotated *NOREP/Prior Written Notice* is available on the PaTTAN website at www.pattan.net Type "Annotated Forms" in the Search feature on the website. If you do not have access to the Internet, you can request the annotated form by calling PaTTAN at 800-441-3215.

# RESOURCES

THE ARC OF PENNSYLVANIA
301 Chestnut Street, Suite 403
Harrisburg, PA 17101
800-692-7258
www.thearcpa.org

BUREAU OF SPECIAL EDUCATION'S
CONSULTLINE, A PARENT HELPLINE
800-879-2301
ConsultLine personnel are available to
parents and advocates of children with
disabilities or children thought to be
disabled to explain federal and state laws
relating to special education; describe
the options that are available to parents;
inform the parents of procedural
safeguards; identify other agencies and
support services; and describe available
remedies and how the parents can proceed.

DISABILITIES RIGHTS NETWORK
1414 North Cameron Street
Suite C
Harrisburg, PA 17103
800-692-7443 (Toll-Free Voice)
877-375-7139 (TDD)
717-236-8110 (Voice)
717-346-0293 (TDD)
717-236-0192 (Fax)
www.drnpa.org

HISPANOS UNIDOS PARA NIÑOS EXCEPCIONALES
(PHILADELPHIA HUNE, INC.)
2215 North American Street
Philadelphia, PA 19133
215-425-6203
215-425-6204 (Fax)
huneinc@aol.com
www.huneinc.org

MISSION EMPOWER
1611 Peach Street, Suite 120
Erie, PA 16501
814-825-0788
advocate@missionempower.org
www.missionempower.org

OFFICE FOR DISPUTE RESOLUTION
6340 Flank Drive
Harrisburg, PA 17112-2764
717-901-2145 (Phone)
800-222-3353 (Toll free in PA only)
TTY Users: PA Relay 711
717-657-5983 (Fax)
www.odr-pa.org
The Office for Dispute Resolution
administers the mediation and due process
systems statewide, and
provides training and services regarding
alternative dispute resolution methods.

PARENT EDUCATION AND ADVOCACY LEADERSHIP
CENTER (PEAL)
1119 Penn Avenue, Suite 400
Pittsburgh, PA 15222
412-281-4404
866-950-1040 (Toll Free)
412-281-4409 (TTY)
412-281-4408 (Fax)
www.pealcenter.org

PUBLIC INTEREST LAW CENTER OF
PHILADELPHIA
United Way Building
1709 Benjamin Franklin Parkway, Second
Floor
Philadelphia, PA  19103
215-627-7100 (Phone)
215-627-3183 (Fax)
www.pilcop.org

PENNSYLVANIA BAR ASSOCIATION
100 South Street
Harrisburg, PA 17101
800-932-0311
www.pabar.org

THE PENNSYLVANIA TRAINING AND TECHNICAL
ASSISTANCE NETWORK (PaTTAN)
Harrisburg 800-360-7282
King of Prussia 800-441-3215
Pittsburgh 800-446-5607
www.pattan.net

STATE TASK FORCE ON THE RIGHT TO
EDUCATION
3190 William Pitt Way
Pittsburgh, PA 15238
1-800-446-5607 ext. 6828

# E X H I B I T   B



# E X H I B I T   B

COMMONWEALTH OF PENNSYLVANIA

PENNSYLVANIA DEPARTMENT OF EDUCATION

OFFICE OF DISPUTE RESOLUTION

|  |  |  |
|---|---|---|
| ██████████ individually, and on behalf of her son, ████████ | : : : | |
| v. | : : | ODR No.: _____ |
| North Penn School District | : : | |

## DUE PROCESS COMPLAINT

### PARTIES

1.     The student is ██████████ ("Student").

2      ██████ mother, who resides in Lansdale, Pennsylvania, has sole educational decision making authority for ██████████████ ("Parent").

3.     The North Penn School District ("District") is the Local Education Agency under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1485 ("IDEA").

4.     The District, which is located at 401 East Hancock Street, Lansdale, Pennsylvania, receives federal financial assistance.

### BACKGROUND

5.     Student is currently sixteen years old and is gravely disabled, with a diagnosis of severe autism and intellectual disability.

6.     Student is unable to communicate verbally (i.e., non-verbal) and requires continuous supervision and close hand-over-hand assistance to ensure his health and safety.

1

7.     Student is unable to perform any of the activities of daily living without close and constant supervision and engages of a variety of challenging behaviors that are self-injurious, dangerous or harmful to others, and involve non-trivial property damage.

8.     Student currently resides at the residential treatment facility ("RTF") of the Melmark School, located at 2600 Wayland Road, Berwyn, Pennsylvania.

9.     Student currently attends the day school at the Melmark School ("School") while residing in the RTF program at the Melmark School.

10.    The School and RTF are located on the same campus and function in a comprehensively, interrelated educational and behavioral residential program.

11.    Student is nominally in tenth grade at the School.

12.    Because Student's current placement in the Melmark RTF is funded by medical insurance through Pennsylvania Medical Assistance, Student's placement in the RTF program is based on a determination of medical necessity by the behavioral health administrator, Magellan Behavioral Health of Pennsylvania ("Magellan").

13.    Magellan notified Parent that Student would be discharged from the Melmark RTF in late August because it had determined that the RTF level of care would no longer medically necessary by late August 2018.

14.    In light of Student's upcoming discharge from RTF, on March 29, 2018, Parent requested in writing that the District provide to provide a residential placement for educational programming for Student (i.e., a "24-hour/7-day IEP") when he is discharged from the Melmark RTF in late August, explaining that, even though Student will be discharged for the RTF program, an around-the-clock residential educational placement would be the appropriate future placement.

2

15.     In her March 2018 written request to District, Parent explained the specific basis of her request for a "24-hour/7-day IEP," stating that:

> In order to continue to make meaningful progress with his educational program, ████ still requires a highly structured residential learning environment for his instructional programming both in-class and in his residence that uses Applied Behavior Analysis (ABA) methodology that implemented by properly trained and supervised ABA counselors. With this email, I request that North Penn School District provide ████ with this 24-hour/7-day IEP in a residential educational setting that uses highly structured ABA methodology during all waking hours, in class and in the residence.

16.     After waiting many months for a response from the District to her March 2018 request, on July 9, 2018, Parent met with representatives of the District, who denied her request for a "24-hour/7-day IEP"—that is, a request for a placement for Student that provides "an a residential educational setting that uses highly structured ABA methodology during all waking hours, in class and in the residence."

## COUNT I
## VIOLATION OF IDEA

17.     Parent hereby incorporates and restates the allegations contained in the preceding paragraph as if set fort at length herein.

18.     In the infrequent and unusual cases of children with such severe autism and intellectual disabilities as Student, where a student's educational and behavior challenges are inextricably intertwined, meaningful education progress is only possible in a highly structured, residential educational placement.

19.     Under IDEA, District must provide qualified disabled students, such as Student, with a free and appropriate public education.

3

20.     In the case of Student, a free and appropriate public education Student is a residential educational placement that uses highly structured ABA methodology during all waking hours, in class and in the residence.

21.     District has refused Parent's request for such a residential educational placement.

22.     Therefore, District failed to provide Student with a free and appropriate public education under the IDEA.

**COUNT II**
**VIOLATION OF SECTION 504 OF**
**THE REHABILITATION ACT**

23.     Parent hereby incorporates and restates the allegations contained in the preceding paragraph as if set fort at length herein.

24.     Under Section 504 of the Rehabilitation Act of 1973("Section 504"), District is prohibited from denying a disabled child a guaranteed education merely because of the child's disability.

25.     District has failed to provide an educational placement that reasonably accommodates Student's disability.

26.     Therefore, District failed to provide the required accommodations under Section 504.

**REQUESTED RELIEF**

27.     Parent, on behalf of Student, requests a due process hearing to address and resolve the various ways in which the District has denied Student a free and appropriate education under the IDEA as well as denying him reasonable accommodations under Section 504.

4

28.     Parent, on behalf of herself and Student, seeks declaratory relief in the form of adjudication that Student's rights have been violated under the IDEA and Section 504.

29.     Parent, on behalf of herself and Student, seeks an order requiring the District to provide a residential educational placement consisting of a "24-hour/7-day IEP" as specified herein beginning with the 2018-2019 school year.

30.     Parent, on behalf of herself and Student, seeks an order declaring the Parent the prevailing party and awarding Parent's attorney its reasonable attorneys and costs in this matter.

31.     This complaint is a formal demand in accordance with the IDEA Section 615(b)(7)(4).

**RESPECTFULLY SUBMITTED:**

**LAW OFFICES OF ERIC A. SHORE, P.C.**

Dated: _July 13, 2018_          BY: _____

**SCOTT K. JOHNSON** (Pa. Id. No. 85024)
Two Penn Center
1500 JFK Blvd., Suite 1240
Philadelphia, PA 19102
Tel.: (267) 546-0124
Fax: (215) 944-6124
Email: scottj@ericshore.com
*Attorneys for*
*behalf of her*

## CERTIFICATE OF SERVICE

I, Scott K. Johnson, Esq., hereby certify that on this date, the foregoing Due Process Complaint was submitted to the Pennsylvania Office of Dispute Resolution using the email address of odr@odr-pa.org, and has been served via email on the following representatives of the Local Education Agency:

Ms. Juliet Matje (matjeje@npenn.org)
Supervisor of Special Education
North Penn School District
401 East Hancock Street
Lansdale, PA  19446

Dr. Jenna Mancini Rufo (rufojm@npenn.org)
Director of Special Education and Student Services
North Penn School District
401 East Hancock Street
Lansdale, PA  19446

Date:  July 13, 2018                              /s/ Scott K. Johnson
                                                 Scott K. Johnson

# E X H I B I T   C



E X H I B I T   C

IN THE COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF EDUCATION
SPECIAL EDUCATION DUE PROCESS HEARING

|  |  |  |
|---|---|---|
| ███████████ individually<br>and on behalf of her son, ███████ | : | |
| v. | : | ODR No. 20966 / 18-19 AS |
| | : | |
| NORTH PENN | : | |
| SCHOOL DISTRICT | : | (Linda M. Valentini, Psy.D., CHO) |

### ANSWER AND MOTION TO DISMISS DUE PROCESS COMPLAINT
### FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED

This matter involves a July 13, 2018 due process complaint ("Complaint") filed by ███████ ███████ ("Parent") on behalf of her son, ███████ ("Student") under the Individuals with Disabilities Education Act ("IDEA"). The Complaint attempts to raise claims against one alleged Local Educational Agency ("LEA"): North Penn School District ("North Penn"). Upon information and belief, North Penn submits that the following facts appear undisputed:

1.    The Parent resides within the borders of North Penn.

2.    The Student resides in a Residential Treatment Facility ("RTF") operated by Melmark.

3.    Melmark's RTF, where the Student currently resides, falls within the borders of Marple-Newtown School District ("Marple-Newtown").

4.    North Penn did not place the Student at Melmark RTF via an Individualized Education Program ("IEP") process; instead, the placement was achieved for medical reasons through Magellan Behavioral Health ("Magellan"), which is the managed care company contracted to administer Pennsylvania's Medicaid program. Magellan funds the Student's placement at Melmark RTF.

5.      Since at least the commencement of the 2017-2018 school term, Marple-Newtown has served as the Student's Local Educational Agency ("LEA") for all special education purposes and has billed North Penn for the educational costs associated with educating the Student while at Melmark School, the approved private school where Student receives his education.

6.      Magellan has indicated that Student will be discharged from Melmark RTF in late August of 2018 due to that setting no longer being medically necessary.

**APPLICABLE LAW**

When a Pennsylvania child is placed in an RTF for non-educational reasons, responsibilities for special education services and funding are subject to a scheme delineated by 24. P.S. § 13-1306 ("Section 1306"). The Pennsylvania Department of Education ("PDE") has determined, via a widely-adhered to Basic Education Circular ("BEC"),[1] that the District of parental residence ("resident district") and the district in which the RTF is located ("host district") have different responsibilities. Specifically with regard to IDEA-eligible students, the BEC clarifies that "the host district is responsible for providing the student with an appropriate program of special education and training consistent with Chapters 14 and 342 of the Pennsylvania regulations and standards." The BEC goes on further to state the following:

> "This means that the host school district is responsible for making decisions regarding the goals, *programming, and educational placement* for each student." (emphasis added).

In return, the BEC clarifies that Section 1306 "allows the host school district to charge the full cost of providing special education programs and services for all institutionalized students."

---

[1] This BEC is attached to this Motion for the convenience of the Hearing Officer and the Parent.

As referenced *supra,* North Penn has (and continues) to serve as the resident district in this case, while Marple-Newtown has (and continues) to serve as the host district in this case.

## ARGUMENT

In this case, the Parent seeks to hold North Penn responsible for an event that has yet to come to pass: they seek that North Penn, as the resident district, *guarantee a residential placement* to the Student once the Student has been discharged by Melmark.  Despite the fact that it appears that North Penn will become the Student's LEA at some future point in time, this does not change the fact that North Penn is *not currently* the Student's LEA.

The Parent's requested remedy cannot possibly be granted against North Penn, as it has no legal authority to make determinations about special education evaluation, program, placement, or the provision of a Free Appropriate Public Education ("FAPE") when it is not the child's LEA.  This issue has been considered in previous administrative-level decisions in Pennsylvania. In both ODR No. 2285-1112-AS and ODR No. 2866-1112-AS (both involving the same student), a non-host district sought dismissal of the parents' due process complaint citing application of Section 1306.  Dismissal occurred in both cases.

The District recognizes that the *Parent* believes that the Student requires a residential placement, and the fact that the Parent wants North Penn to guarantee such a placement to her before it has a legal obligation to do so.  In Section 1306, Pennsylvania's legislature has created a statutory scheme that is specifically designed for these situations.  As the Student does not reside with his parent at this time (contrasted with unilateral private school day placements, charter school and cyber charter school placements, where the Student *does* continue to reside in-district), there is no nexus that compels non-LEA North Penn to act.  If the Student does return home, the District does not dispute the fact that it will once again become the Student's LEA, but

it *does* dispute the assertion that the Student must be immediately afforded a residential placement as a matter of FAPE from the outset.

It will likely be argued that a parent whose child is being educated by a host district in a Section 13-1306 scenario should have the right to challenge an IEP, or lack thereof as the case may be, from the resident district because the absence of that right could cause an inappropriate program and/or placement to be in effect upon the transfer of LEA responsibility from the host district to the resident district. While such an outcome might very well occur, it is no different from any other intrastate transfer that involves a change in LEA responsibility. For example, a student whose parents move from one school district to another place that student at risk of having an inappropriate IEP in place in the new LEA and yet there is no available legal recourse until that new LEA assumes the responsibility for providing a FAPE. It should also be noted that, as with a voluntary move to a new residence by a parent, there is no information to suggest that the placement of this Student in the Melmark RTF was anything but voluntary on the part of the Parent. Further, just as the loss of a job might "force" a family to move from one school district to another less expensive area, the loss of insurance or governmental subsidy might "force" this Parent to move her child from one LEA to another. Last, it is possible that intervening events between now and late-August of 2018, such as a change in the Student's health condition, might cause North Penn to *never* regain LEA status. This is pointed out merely to highlight the fact that the concept of North Penn becoming the LEA is based entirely upon a set of assumptions.

Put as simply as possible: North Penn cannot be compelled to offer a placement *of any sort* to the Parent until it is required to offer a FAPE. That is not the case here, and accordingly, this matter must be dismissed as unripe for dispute.

## ANSWER

To the extent that an Answer to the Parent's Complaint is required, North Penn hereby denies the Parent's assertion that it has denied the Student a free appropriate public education. By way of further answer, when it was informed that the Student would likely be discharged from Melmark RTF at some future date, possibly in August of 2018, North Penn, acting out of an abundance of caution and beyond its legal obligations, conducted a reevaluation and held an IEP team meeting to develop the program that would be made available upon the Student's return to having North Penn serve as his LEA. As noted above, the fact that North Penn has developed an IEP in anticipation that the Student will likely become its responsibility to educate *on a future date* does not impart upon the Parent the legal authority to challenge that IEP through a due process hearing. The District incorporates its Motion to Dismiss contained herein by reference.

## CONCLUSION

As this Complaint seeks special education programming and placement decisions from a non-LEA, and as the Hearing Officer cannot compel a non-LEA to "provide" a placement it is under no legal obligation to provide, this matter must be dismissed for failure to state a claim upon which the requested relief can be granted.

Respectfully submitted,

Date:   July 23, 2018                    By:   _____

Kyle J. Somers, Esquire – PA307683
331 East Butler Avenue
POB 5069
New Britain, Pennsylvania  18901
(215) 345-9111

*Counsel for North Penn School District*

## Nonresident Students in Institutions

**24 P.S. § 13-1306**

**DATE OF ISSUE**:   July 1, 1999

**REPLACES**:   Nonresident Students in Institutions, BEC 24 P.S. 13-1306, issued September 1, 1997

### PURPOSE

Students who are residing in a "children's institution" whose parents are not residents of the school district in which the institution is located are identified as "1306" students. These students may be in a variety of residential centers, homes or institutions, such as Drug and Alcohol Treatment Centers, homes for orphans or other "institutions for the care and training for orphans or other children."

### RESPONSIBILITY OF HOST DISTRICT

*School districts which have students residing in a children's institution located within their borders ("host" school districts) are responsible for educating the students in those children's institutions.*

Under Section 1306 of the School Code, the host school district is required to allow nonresident students in children's institutions, including detention homes, drug and alcohol treatment centers and others, located within their borders, to attend the public schools of the host school district.

For some students living in these children's institutions this may not be appropriate because of the terms of the institutionalization or because of the particular educational needs of the student. In some cases, the host school district may wish to conduct an educational or alternative education program at the institution. These districts should apply to PDE for approval to run an experimental or alternative program for these students using the process set forth in 22 Pa. Code § 4.82 of the State Board of Education Regulations or programs for disruptive youth per 24 P.S. Article XIX-C. In other cases, the host school district may contract with another educational entity, such as an Intermediate Unit, to provide an educational program for the students in the institution. Some children's institutions may wish to apply to PDE for approval to operate education programs as nonpublic schools.

### FINANCING NON-RESIDENT STUDENTS LIVING IN CHILDREN'S INSTITUTIONS

If a student residing in a children's institution is found to be exceptional, the host school district is responsible for providing the student with an appropriate program of special education and training consistent with Chapters 14 and 342 of the Pennsylvania regulations and standards. This means the host school district is responsible for making decisions regarding the goals, programming, and educational placement for each student. The host school district is also responsible for seeking advice from the resident school district with respect to the student, and keeping the resident school district informed of its plans to educate the student. Other arrangements may be made in writing between the two districts regarding educational and procedural responsibilities, with the approval of the Department of Education and notice and opportunity to respond by the parents.

Host school districts will finance the provision of the educational program for the students in children's institutions through Section 1306 of the school code, "Non-resident inmates of children's institutions." This section allows the host school district to charge the school district where the student's parents live, or "resident" school district, the host district's tuition rate, as determined by Section 2561, for the education of these students. Arrangements for this payment are made directly between the two school districts.

For a student residing in a children's institution who is eligible for special education services, the host school district may charge up to the total net cost of the services provided, minus any amount already received as a tuition charge. The Pennsylvania School Code, 24 P.S. Section 1309(2), allows the host school district to charge the full cost of providing special education programs and services for all institutionalized students.

RESIDENT SCHOOL DISTRICT RESPONSIBILITIES INCLUDE DIRECT PAYMENT TO THE HOST SCHOOL DISTRICT FOR PROVIDING THE EDUCATIONAL PROGRAM AND STAYING INFORMED OF THE EDUCATIONAL SERVICES BEING PROVIDED TO A STUDENT ELIGIBLE FOR SPECIAL EDUCATION.

INTERMEDIATE UNITS (IUS) MAY CONTINUE TO PROVIDE THE EDUCATIONAL PROGRAM FOR STUDENTS IN SOME INSTITUTIONAL SETTINGS AND WILL CONTINUE TO RECEIVE SUPPORT FROM THE COMMONWEALTH FOR THESE STUDENTS. RESIDENT SCHOOL DISTRICTS WILL PAY THE DIFFERENCE BETWEEN THE SUPPORT FROM THE COMMONWEALTH AND THE COST OF EDUCATING INSTITUTIONALIZED STUDENTS IN NEED OF A SPECIAL EDUCATION PROGRAM, IF NECESSARY.

The Public School Code, at Section 2509.1 (b.1), allows the Department to pay intermediate units (IUs) for costs associated with "operating and administering classes or schools for institutionalized children." This section of the School Code does not require IUs to operate these classes, but IUs are allowed to do so, and are required to do so to the extent that it is not feasible for a school district to take care of the education of some or all of such students. To support efforts in this area, PDE expends funds up to the limit allowed by the General Assembly, from the total amount appropriated for special education. This will not necessarily fund intermediate units for 100% of their current expenses, because Section 2509.1 (b.1) calculates payments on prior year amounts and because the maximum available to IUs under Section 2509.1(b) is currently established in law.

This system also includes a tuition recovery procedure, whereby the resident school district (that is, the district in which the student's parents reside) pays to the Commonwealth a tuition charge. The tuition charge is the tuition amount of the resident school district, calculated in accord with Section 2561 of the School Code. This tuition amount is recovered by the Commonwealth following determination of the student's resident school district in accordance with procedures in Section 1308.

In cases where:

1. the host school district has implemented all of its responsibilities under Section 1306,
2. the child is an eligible student under Chapter 14, and
3. the host school district can show that the cost for the IU program used by the host school district exceeds the funds provided to the IU by the Commonwealth, then the resident school district is responsible for paying these additional costs of the special education program.

Amendments to Section 1309 of the School Code established the special education charge which may now be the total net cost of the special education program provided. In the case of a child with exceptionalities who is an inmate of an institution and who is served under Section 2509.1(b), the host school district may charge the district of residence an amount that does not exceed the total cost of the special education program provided minus the amount received per child from the Commonwealth under Section 2509.1(b).

For billing purposes, the IU may act as a billing agent for the host school district. When an IU does so, it should clearly identify itself as acting in that capacity in order to trigger the tuition recovery process called for in Section 1309. Regardless of who does the billing, that entity should certify that the above listed conditions are satisfied.

## PROCEDURES TO FOLLOW TO ESTABLISH RESIDENCY FOR A "1306" STUDENT

The following procedure is set forth in 24 P.S. §13-1308 to establish the residency of a student living in a children's institution but whose parents are not residents of the school district in which the institution is located.

- The officers of the institution submit to the board of school directors of the host school district a sworn statement listing the names, ages and school district of each resident of the institution.
- The host school district forwards a form PDE-4605, Determination of District of Residence for Students in Facilities or Institutions, by certified mail, to the school district in which the institution declares the student's parents reside (the resident school district). The secretary of that school district must sign the form to acknowledge or disclaim the residence of the student.
- If the resident school district does not return the form within fifteen days, the host school district shall send the form to the resident school district again.
- If the resident school district again does not return the form within fifteen days, the host school district may construe such neglect to be acknowledgment of the student's residence.
- The resident school district shall pay the tuition (and any applicable special education charge) billed by the host school district for its residents upon receipt of the bill.
- The resident school district may appeal the tuition bill to the Secretary of Education. The Secretary's decision as to the amount of the bill and/or which school district is responsible for the tuition is final.
- If the resident school district neglects or refuses to pay the amount billed or determined by the Secretary of Education if appealed, the Secretary has the authority to deduct the amount owed by the resident school district from funds due from the Commonwealth and pay that amount to the host school district.
- Any school-aged person living in an institution in Pennsylvania whose parent(s) or legal guardian resides outside Pennsylvania is entitled, upon request, to PDE review of his or her place of residence. Procedures used by PDE to make such determination are described by BEC 24 P.S. Section 13-1308.
- Students from out-of-state must have a guarantee or actual tuition paid prior to the student enrolling in the school district program. See BEC 24 P.S. 13-Section 1308(1).
- For a student determined to be emancipated, use his or her last address to establish the school district of residence.

- Due to the brief institutionalization periods for some students in institutions, host school districts are encouraged to bill the resident school district on a regular and periodic basis.

**REFERENCES:**

**Purdon's Statutes**

    24 P.S. Section 13-1306
    24 P.S. Section 13-1308
    24 P.S. Section 13-1309
    24 P.S. Section 25-2509.1
    24 P.S. Section 25-2561

**State Board of Education Regulations**

    22 Pa. Code § 11.18

    22 Pa. Code Chapter 14

**Department of Education Standards**

    22 Pa. Code Chapter 342

**Other**

    *Bermudian Springs School District v. Department of Education*, 475 A 2d 943 (Pa. Commonwealth, 1984)

**BUREAU/OFFICE CONTACT:**

School Services Office
Pennsylvania Department of Education
333 Market Street
Harrisburg, PA 17126-0333
Phone: 717.783.3750
TDD: 717.783.8445
Fax: 717.214.4389

*For approval to operate a nonpublic school*:

Division of Nonpublic and Private School Services
Bureau of Community and Student Services
Phone: (717) 783-5146

*For copies of form PDE-4605, Determination of District of Residence for Students in Facilities or Institutions*:

Division of Subsidy Data and Administration
Bureau of Budget and Fiscal Management
Phone: (717) 787-5423

E X H I B I T   D



E X H I B I T   D

# PENNSYLVANIA
# SPECIAL EDUCATION HEARING OFFICER

### RULING ON MOTION TO DISMISS

In re: ███████████ vs. North Penn School District
ODR #: 20966/18-19 AS
Date: July 24, 2018

Complaint:

In her due process Complaint, filed through counsel, Parent requests a due process hearing to "address and resolve the various ways in which the District has denied Student a free and appropriate education under the IDEA as well as denying Student reasonable accommodations under Section 504". The Parent "seeks an order requiring the District to provide a residential educational placement consisting of a "24-hour/7-day IEP" … beginning with the 2018-2019 school year". The Parent also "seeks an order declaring the Parent the prevailing party and awarding Parent's attorney its (sic) reasonable attorneys (sic) and costs in this matter"[1].

Background:

Student currently lives in another District (the Host District) in a residential treatment center with an on-grounds school. The Student's educational services are provided within the Host District but funded by the District (District of Residence).  The Host District, not the District of Residence, is currently Student's LEA.

The residential portion of Student's placement is funded through medical assistance on the basis of medical necessity. The insurer, Magellan, has determined that by the end of August residential treatment may not be medically necessary; hence, the residential treatment center is contemplating discharging Student.  Upon discharge, Student is likely to return to the District of Residence, a party to this matter.

According to the Parent's Complaint, upon learning that discharge was being contemplated, on March 29, 2018 she requested that upon discharge the District of Residence begin providing a residential placement for Student (a "24-hour / 7-day IEP"). On July 9, 2018 the District of Residence met with the Parent and denied her requested placement.[2] The Parent filed her Complaint on July 13, 2018.

On July 23, 2018 the District of Residence filed its Answer to the Complaint and Motion to Dismiss. The District of Residence argues that as it is not Student's LEA it currently has no legal authority to make recommendations for placement or to guarantee a specific placement.  The District of Residence understands that if and when Student returns home it will assume the responsibilities of

---

[1] Hearing Officers do not have the authority to award attorney's fees.
[2] In contrast to the "many months" delay alleged in the complaint.

acting as the Student's LEA, but also disputes the Parent's assertion that Student must immediately be afforded a residential placement in order to receive FAPE.

The District of Residence also submits that in "an abundance of caution and beyond its legal obligations" it did conduct an evaluation of Student and convened an IEP meeting to develop Student's program if and when it becomes Student's LEA. The District of Residence argues that given that it is not Student's current LEA, and although it proactively evaluated Student and convened an IEP meeting, the Parent has no current legal right to challenge that IEP through a due process hearing. The District of Residence argues that the matter is not ripe for hearing and must be dismissed.

Conclusion:
The District of Residence makes a well-reasoned argument which I will not repeat here but will incorporate by reference, along with the July 1, 1999 Basic Education Circular (BEC) 24 P.S. Section 13-1306.

At the present time the District of Residence is not Student's LEA, and is not under any current legal obligation to propose much less guarantee a placement for Student. Likewise I cannot find a prospective violation of FAPE and order a prospective placement, nor can I find the Parent the prevailing party. At the present time the Parent's Complaint is untimely as it requests that I grant relief well beyond my authority. The District's Motion will be granted and the Complaint will be dismissed.

ORDER

It is hereby ORDERED that the District's Motion to Dismiss is GRANTED, this matter is DISMISSED, and the hearing scheduled for August 28, 2018 is canceled.

July 24, 2018

*Linda M. Valentini, Psy.D. CHO*
Linda M. Valentini, Psy.D CHO
Hearing Officer
NAHO Certified Hearing Official