IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| L.T., | |
|---|---|
| Plaintiff, | |
| v. | CIVIL ACTION NO. 18-3347 |
| NORTH PENN SCHOOL DISTRICT, | |
| Defendant. | |

**OPINION**

**Slomsky, J.**  December 14, 2018

## I. INTRODUCTION

Presently before the Court are Cross-Motions for Judgment on the Joint Stipulated Record in a case challenging the decision of a Pennsylvania Special Education Hearing Officer. (Doc. Nos. 11, 12.) On July 13, 2018, Parent L.T. ("Parent"), individually and on behalf of her son, R.J. ("Student"), filed a due process claim against North Penn School District ("North Penn") with the Pennsylvania Department of Education, Office of Dispute Resolution, pursuant to procedures set forth in the Individuals with Disabilities Education Act ("IDEA"). (Doc. No. 1.) Parent alleged that the special education needs of her child were not met in violation of the requirements of due process.

Student currently resides at the Residential Treatment Facility ("RTF") at the Melmark School, which is located in the Marple-Newtown School District. He is set to be discharged on December 24, 2018. (Doc. No. 12-1 at 3.) In anticipation of Student's return to her home, Parent, who lives in the North Penn School District, asked North Penn to provide Student with an Individualized Education Plan, or IEP, that included a 24-hour/7-day residential placement. (Doc. No. 10 at 3.) After an IEP team meeting, North Penn denied this request, which led Parent to file

the due process complaint. (Id. at 4.) In the complaint, she argued that North Penn's decision denies Student a free appropriate public education, or FAPE, in violation of the IDEA and Section 504 of the Rehabilitation Act of 1973. (Id. at 4-5.) On July 23, 2018, North Penn filed an Answer and Motion to Dismiss Parent's due process complaint, arguing that because Student currently resides in Marple-Newtown School District, and not North Penn, it is not obligated to provide him with an IEP. (Id. at 8.) The next day, the Pennsylvania Special Education Hearing Officer issued a decision in which she agreed with North Penn School District. (Id. at 17-18.)

On August 7, 2018, Plaintiff initiated this action, seeking review of the Hearing Officer's decision. (Doc. No. 1.) On November 8, 2018, the parties filed a Joint Stipulated Record that includes Parent's due process complaint, North Penn's Answer and Motion to Dismiss, and the Hearing Officer's Decision. (Doc. No. 10.) On November 15, 2018, the parties filed Cross-Motions for Judgment on the Joint Stipulated Record. (Doc. Nos. 11, 12.) On November 21, 2018, both parties filed Responses in Opposition to the respective Motions for Judgment. (Doc. Nos. 13, 14.) On November 26, 2018, Parent filed a Reply to North Penn's Response in Opposition to her Motion for Judgment.[1] (Doc. No. 16.)

The Motions for Judgment are now ripe for review. For the reasons stated infra, Parent's Motion for Judgment (Doc. No. 12) will be granted and North Penn's Motion for Judgment (Doc. No. 11) will be denied.

---

[1] On November 26, 2018, Parent also requested that the Court take judicial notice of a Pre-Hearing Order issued by a Special Education Hearing Officer from the Pennsylvania Department of Education, Office of Dispute Resolution in In re: G.A., a student in the Colonial School District, ODR File No. 21018-1819AS (August 22, 2018). (Doc. No. 16.) North Penn School District has not opposed this request.

## II. BACKGROUND

Student R.J., who was 16 years-old when this lawsuit was filed, is severely autistic and has been diagnosed with an intellectual disability. (Doc. No. 10 at 2.) He is unable to communicate verbally, and requires constant supervision and hand-over-hand assistance[2] to ensure his health and safety, as well as the safety of others. (Id.) Without this supervision, he cannot perform any activities of daily living and engages in "a variety of challenging behaviors that are self-injurious, dangerous or harmful to others, and involve non-trivial property damages." (Id. at 3.)

Parent L.T., who has sole educational decision-making authority for Student, currently lives in Lansdale, Pennsylvania, which is located in North Penn School District. (Id. at 2.) Student does not live with Parent. At present, he resides full-time at the Residential Treatment Facility ("RTF") at the Melmark School in Berwyn, Pennsylvania. (Id. at 3.) He also attends Day School there. The Melmark RTF and Day School are located on the same campus within the Marple-Newtown School District and function comprehensively to provide an educational and behavioral program to individuals with specials needs. (Doc. No. 12-1 at 2-3.) Because the Melmark School is located in Marple-Newton School District, Marple-Newton is Student's "host district" and is therefore responsible for providing Student with special education programming under the IDEA. The Melmark Day School, which is private, charges Marple-Newton for Student's education. But because Parent lives in North Penn School District, North Penn is Student's "resident district" and ultimately foots the bill for Student's Melmark Day School tuition. (Doc. No. 10 at 9.)

---

[2] "Hand-over-hand assistance involves placing [ones'] hands over an individual with autism's hands to help them complete a movement. When using hand-over-hand assistance, the adult is controlling the movements of the child's hands." HAND-OVER-HAND ASSISTANCE, ENCYCLOPEDIA OF AUTISM SPECTRUM DISORDERS (Fred R. Volkmar ed., 2013) (available at Springer Link).

North Penn does not pay for Student's residential placement at the Melmark School RTF. Instead, Student's residential placement is funded by Pennsylvania Medical Assistance, or Medicaid, which pays for healthcare services for qualifying individuals. (Id. at 3.) As such, Student's residential placement is subject to a continuing "medical necessity" evaluation by Magellan Behavioral Health of Pennsylvania ("Magellan"), a behavioral health administrator. (Id.) In early 2018, Magellan notified Parent that Student's residential placement at the RTF was no longer medically necessary and that he would be discharged by late August 2018. (Id.) That discharge date has been continued to December 24, 2018. (Doc. No. 12-1 at 3.)

When Student is discharged from the Melmark School RTF, he will move back to Parent's home located in the North Penn School District. In anticipation of this move and upon learning of Magellan's discharge decision, Parent emailed North Penn on March 28, 2018 and asked it to provide Student with an Individualized Education Plan ("IEP") that included a residential placement at an institution like the Melmark School. (Doc. No. 10 at 3.) In her email, Parent wrote the following:

> In order to continue to make meaningful progress with his educational program, [Student] still requires a highly structured residential learning environment for his instructional programing both in-class and in his residence that uses Applied Behavioral Analysis (ABA) methodology that is implemented by properly trained and supervised ABA counselors. With this email, I request that North Penn School District provide [Student] with this 24-hour/7-day IEP in a residential educational setting that uses highly structured ABA methodology during all waking hours, in class and in the residence.

(Id.)

In July 2018, North Penn held an IEP team meeting to evaluate whether the School District should provide Student with a residential placement IEP. (Doc. No. 11-1 at 2.) On July 9, 2018, North Penn issued a Notice of Recommended Education Placement/Prior Written Notice ("NOREP/PWR") that found that Student required an educational placement, but denied Parent's

4

request for a residential placement.[3] (Doc. No. 1 at 17; Doc. No. 10 at 4.) North Penn explained its decision as follows:

> [Student] requires direct, explicit teaching of skills in communication, functional academics, and behavioral supports that are beyond the scope of the general education curriculum in order to meet the outcomes identified in the measurable annual goals section of this IEP.
>
> The team discussed that while the program could be implemented at North Penn High School, [Student] would need a structured transition plan. Due to the anticipated changes to [Student's] living environment, the team determined that it would be appropriate to maintain his educational setting at The Melmark School so as to avoid multiple transitions occurring simultaneously.
>
> The IEP team discussed residential placement but determined that it is reasonable to anticipate that Ryan will make meaningful progress toward his IEP goals while receiving instruction during a traditional day school, albeit in an approved private school that is highly-tailored to meet his needs.

(Id. at 17.)

On July 13, 2018, Parent filed a special education due process complaint against North Penn with the Pennsylvania Department of Education, Office of Dispute Resolution. Parent argued that by denying Student a residential placement upon his discharge from the Melmark School RTF, North Penn denied Student a free and appropriate education in violation of IDEA and Section 504 of the Rehabilitation Act of 1973. (Doc. No. 10.) On July 23, 2018, North Penn filed an Answer and Motion to Dismiss the due process complaint. The next day, a Pennsylvania Education Hearing Officer granted North Penn's Motion to Dismiss. (Id. at 17.) As noted above, on August

---

[3] Under 34 C.F.R. § 300.503(a), a school district must provide a parent with "prior written notice" when the school district (1) proposes to begin or change the identification, evaluation, or educational placement of the child or the provision of a free appropriate public education ("FAPE") to the child; or (2) refuses to begin or change the identification, evaluation, or educational placement of the child or the FAPE of the child. In Pennsylvania, school districts use a Notice of Recommended Education Placement, or NOREP, to provide that notice.

7, 2018, Parent initiated the action in this Court, seeking review of the Hearing Officer's decision. (Doc. No. 1.)

III.  **STANDARD OF REVIEW**

Because parents and educators sometimes disagree about what a child's Individualized Education Plan, or IEP, should contain, the IDEA has established procedures to resolve disputes. See Endrews F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1, 137 S.Ct. 988, 994 (2017). The parties may resolve their differences informally, through a "[p]reliminary meeting," or, more formally, through mediation. §§ 1415(e), (f)(1)(B)(i). Additionally, the parties may proceed to a "due process hearing" before a state or local educational agency. §§ 1415(f)(1)(A), (g).

At the conclusion of the state due process hearing, the IDEA permits the losing party to appeal the decision to state or federal court. § 1415(i)(2)(A). The district court reviews the record of the administrative proceeding, hears additional relevant evidence at the request of a party, and, based on a preponderance of the evidence, grants appropriate relief. § 1415(i)(2)(C); Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 760 (3d Cir. 1995). The district court gives "due weight" to the hearing officer's decision. Board of Ed. of Hendrick Hudson Central Sch. Dist., Westchester Cty. v. Rowley, 458 U.S. 176, 205-06 (1982).

Affording "due weight" to the hearing officer's decision requires a district court to conduct a "modified de novo review" of the administrative proceedings. Methacton Sch. Dist. v. D.W., No. 16-2582, 2017 WL 4518765, at *5 (E.D. Pa. Oct. 6, 2017) (citing Shore Reg. High Sch. Bd. of Educ. v. P.S., 381 F.3d 194, 199 (3d Cir. 1994)). Courts are not free to "substitute their own notions of sound education policy for those of the educational agencies they review." Id. (citing Susan N., 70 F.3d at 757. As such, a district court must refer to the hearing officer's findings of fact unless the court identifies contrary, non-testimonial evidence on the record. S.H. v. State-Operated Sch. Dist. of the City of Newark, 336 F.3d 260, 270 (3d Cir. 2003). But the legal

determinations of the Hearing Officer are subject to plenary review by the district court. D.W., 2017 WL 4518765, at *5 (citing S.H., 336 F.3d at 271)).

## IV. ANALYSIS

The sole issue before the Court is whether the Hearing Officer erred by holding that (1) this case was not ripe because North Penn was not obligated to offer Student a contingent IEP, and (2) North Penn was not the proper party to file the complaint against because it is not Student's current Local Education Agency, or LEA. Accordingly, the Court must decide whether North Penn, a resident school district, must provide a contingent IEP to Student, who resides in a residential treatment facility outside the jurisdictional boundaries of North Penn where Parent resides, and who is set to be discharged from that facility and return to Parent's home in the resident school district.

Parent argues that the Hearing Officer erred and that North Penn is obligated to develop and offer Student a contingent IEP before he returns to North Penn's jurisdiction. North Penn urges the Court to adopt the Hearing Officer's reasoning and find that, as the resident school district, it has no obligation to make available a FAPE to Student through an IEP while he resides in a different school district. To address these arguments, the Court will first note the provisions of the IDEA that apply to this case and the relevant Pennsylvania statutory framework. Having done so, the Court then will discuss the Pennsylvania Special Education Hearing Officer's decision on Parent's due process complaint filed with the Pennsylvania Department of Education, Office of Dispute Resolution. Finally, the Court will apply the law to the relevant facts and address the parties' arguments in turn.

### A. Individuals with Disabilities Education Act

Through the Individuals with Disabilities Education Act ("IDEA"), the federal government provides States with federal funds to assist in educating children with disabilities. 20 U.S.C.

§ 1400 et seq. This funding is conditioned upon compliance with certain statutory requirements, including the requirement that States provide a free appropriate public education, or FAPE, to each eligible child. Endrew F. ex rel. Joseph F., 137 S.Ct. at 994 (citing § 1412(a)(1)). Under IDEA, a FAPE includes "special education" and "related services." § 1401(9). A "special education" is "specially designed instruction . . . to meet the unique needs of a child with a disability." § 1401(26). "Related services" are the support services "required to assist a child . . . to benefit from" that instruction. § 1401(29). In exchange for receiving federal funds under the IDEA, a State must provide a disabled child with special education and related services "in conformity with the [child's] individualized education program," or IEP. Endrew F. ex rel. Joseph F., 137 S.Ct. at 994 (quoting § 1401(9)(D)).

The Supreme Court has said that the IEP is "the centerpiece of the statute's education delivery system for disabled children." Endrew F. ex rel. Joseph F., 137 S.Ct at 994 (quoting Honig v. Doe, 484 U.S. 305, 311 (1988)). The IEP is the vehicle through which special education and related services are "tailored to the unique needs" of a particular child. Rowley, 458 U.S. at 181. The IDEA requires that each IEP includes a written statement of the child's present level of academic achievement and functionality, annual goals, a description of how the child's progress towards those goals will be measured, and a description of related services and supplementary aids necessary to effectuate the special education needed. See § 1414(d).

Under the IDEA, a state educational agency ("SEA") is charged with overall compliance with the statutory requirements. § 1401(32). In turn, the SEA delegates authority to a local educational agency ("LEA"), usually a school district, which also receives federal funding by complying with the IDEA. §§ 1401(19), 1414(a). As a condition of receiving federal funding, each LEA, at the beginning of each school year, is required to develop and implement an IEP for

each child with a disability who resides within the LEA's jurisdiction. § 1414(d)(2)(A). When a child with a disability transfers into the LEA's jurisdiction during the school year, the LEA "shall provide such child with a free appropriate education, including services comparable to those described in the previously held IEP, in consultation with the parents until such time as the [LEA] adopts the previously held IEP or develops, adopts, and implements a new IEP that is consistent with Federal and State law." § 1414(d)(2)(C)(i)(I).

### B. Pennsylvania Special Education Statutory and Regulatory Framework

In Pennsylvania, a child is generally considered a resident of the school district where his parents reside. 24 P.S. § 13-1302. But there are exceptions to this rule. Sometimes, non-educational agencies place children into residential treatment facilities for non-educational reasons, such as physical, mental, or intellectual conditions. In that situation, it is possible that a child's parent resides in one school district, but the residential treatment facility is located in a different school district. The educational rights of a student who resides in a facility located in a school district different from the school district in which his parents reside are set forth in the Pennsylvania Public School Code, 24 P.S. § 13-1306. These students are known as "1306 students."

In relevant part, Section 13-1306 provides as follows:

> . . . [W]henever a student described in this section is a suspected or identified eligible student as defined in 22 Pa. Code Chs. 14 (relating to special education services and program), and 342 (relating to special education services and programs), the school district in which the institution is located is responsible for:
>
> (1) Providing the student with an appropriate program of special education and training consistent with the act and 22 Pa. Code Chs. 14 and 342; and
>
> (2) Maintaining contact with the school district of residence of the student for the purpose of keeping the school district of residence informed of its plans for educating the student and seeking the advice of that district with respect to the student.

9

Responsibilities to 1306 students are set forth in Section 1306 itself and in the Pennsylvania Department of Education Basic Education Circular, titled <u>Nonresident Students in Institutions</u>. See <u>Nonresident Students in Institutions</u>, BEC 24 P.S. § 13-1306 (issued July 1, 1999) ("BEC"). In guidance referring to 1306 students, Pennsylvania refers to the parent's district the "resident district," and uses the term "host district" to describe the district where the residential treatment facility is located. <u>Id.</u> According to the BEC, the host district is responsible for making decisions regarding goals, programming, and educational placement for students placed in residential treatment facilities by third-parties. This means that the host district is responsible for developing and implementing the student's IEP. <u>Id.</u> at 1.

While the host district is responsible for the student's IEP, the resident district is responsible for paying for it. Section 1306 "allows the host school district to charge the school district where the student's parents live, or "resident" school district, the host district's tuition rate . . . for the education of these students." <u>Id.</u> at 2. In addition, the host district must also seek "advice from the resident school district with respect to the student, and keep[] the resident school district informed of its plans to educate the student." <u>Id.</u>

### C. Pennsylvania Special Education Hearing Officer's Decision

On July 24, 2018, a Special Education Hearing Officer dismissed Parent's due process complaint, holding that (1) the issue was not ripe, and (2) North Penn School District was not the proper party against whom to file the complaint. (Doc. No. 10 at 17-18.) In support of her finding, the Hearing Officer incorporated North Penn's argument by reference. Summarizing that argument, she wrote:

> [North Penn] argues that as it is not Student's LEA it currently has no legal authority to make recommendations for placement or to guarantee a specific placement. [North Penn] understands that if and when Student returns home it will assume the responsibilities of acting as Student's LEA, but also disputes the
10

Parent's assertion that Student must immediately be afforded a residential placement in order to receive FAPE.

[North Penn] also submits that in "an abundance of caution and beyond its legal obligations" it did conduct an evaluation of Student and convened an IEP meeting to develop Student's program if and when it becomes Student's LEA. [North Penn] argues that given that it is not Student's current LEA, and although it proactively evaluated Student and convened an IEP meeting, the Parent has no current legal right to challenge that IEP through a due process hearing. [North Penn] argues that the matter is not ripe for hearing and must be dismissed.

(Id. at 17-18.) Agreeing with North Penn, the Hearing Officer held the following:

At the present time [North Penn] is not Student's LEA, and is not under any current legal obligation to propose much less guarantee a placement for Student. Likewise I cannot find a prospective violation of FAPE and order a prospective placement, nor can I find the Parent the prevailing party. At the present time the Parent's Complaint is untimely as it requests that I grant relief well beyond my authority. The District's Motion will be granted and the Complaint will be dismissed.

(Id.)

### D. The Hearing Officer Erred in Holding that This Case was not Ripe and that North Penn School District was an Improper Party

Parent wants North Penn School District to have a residential placement IEP in place for Student if and when Magellan, the behavioral health administrator, cuts funding for his current placement at the Melmark School RTF. (Doc. No. 12-1.) She acknowledges that North Penn, as the resident district, currently does not have an obligation to provide Student with a FAPE, but submits that exceptional circumstances such as these compel a resident district to offer a student an IEP. (Id. at 6-7.) Essentially, she argues that North Penn is obligated to offer Student a contingent IEP. It then follows, according to Parent, that she has standing to challenge the refusal of that contingent IEP through the due process complaint procedures provided in the IDEA. (Id.)

North Penn disagrees and asks the Court to adopt the reasoning of the Hearing Officer. It contends that under Section 13-1306, Marple-Newtown School District, as Student's host district, is solely responsible for making a FAPE available to Student through an IEP. (Doc. No. 11-1 at 6-

7.) Although North Penn concedes that it will become responsible for developing and implementing an IEP for Student if and when he returns to Parent's home, it claims that it does not have an obligation to develop that IEP at this time. (Id.) Thus, North Penn contends that Parent does not have standing to challenge its July 2018 decision, as spelled out in the Notice of Recommended Education Placement/Prior Written Notice ("NOREP/PWN"), to refuse Student a residential placement IEP.

As an initial matter, the IDEA does not require a resident school district to provide a FAPE to a 1306 student. See I.H v. Cumberland Valley Sch. Dist., 842 F. Supp. 2d 762, 771 (M.D. Pa. 2012) (citing Dutkevitch ex rel. v. Dutkevitch v. PA Cyber Charter Sch., 439 Fed. App'x. 177 (3d Cir. 2011)). The IDEA only requires a resident school district to provide a FAPE to a child with a disability who resides within its jurisdiction. § 1414(d)(2)(A). To require otherwise would place an unreasonable burden on the resident district. I.H., 842 F. Supp. 2d at 771. Accordingly, the Court agrees with Defendant that the current obligation to provide Student with a FAPE consistent with IDEA rests with Marple-Newtown School District, and not North Penn.

But the inquiry does not stop there. Indeed, there are circumstances in which courts have held that a resident district has an obligation to develop an IEP for a student despite having no obligation to provide a FAPE for that student. Id. at 771-73.

In I.H., the court was asked to decide whether a Hearing Officer erred by holding that the Cumberland Valley School District did not have an obligation to develop an IEP for a student who lived within its jurisdiction, but was enrolled at a cyber-school, and not one of Cumberland Valley's public schools. Id. There, the cyber-school, and not Cumberland Valley, was the student's LEA and had the sole obligation to provide him with a FAPE. The district court held that even though Cumberland Valley did not have to provide the student with a FAPE, as his resident district, it was

12

required to provide him with a contingent IEP, regardless of his enrollment status. Id. at 773. The court did not find it relevant that the cyber-school, and not Cumberland Valley, was the student's LEA. Instead, the court focused on the distinction between a FAPE and an IEP and the remedial nature of the IDEA. Id. at 771-73.

In disagreeing with the Hearing Officer, the court in I.H. first drew a distinction between a FAPE and an IEP. Id. at 771-72. It explained that although a FAPE is provided through an IEP, an IEP is merely an "offer of a FAPE." Id. at 771. The two do not necessarily go hand-in-hand. The court posited that as a "mere offer of a FAPE," an IEP can have a prospective nature. Elaborating, the court reasoned as follows:

> While this exact question—whether a student enrolled in a cyber charter school residing within a public school district is entitled to an IEP from that public school district regardless of enrollment status—has not been addressed by the Third Circuit, several well-reasoned district court opinions throughout this Circuit have found that where a parent either re-enrolls their child in the public school or requests evaluations with the intention of re-enrolling the student, the public school is required to evaluate the child and develop an IEP for the purposes of proposing a FAPE. See Moorestown Twp. Bd. of Educ. v. S.D., 811 F.Supp.2d 1057, 1073 (D.N.J.2011) ("[W]here parents either re-enroll their child in public school or request evaluations so they can re-enroll him, the district must evaluate and develop an IEP for that child for purposes of proposing a FAPE."); A.Z. on behalf of M.Z. v. Mahwah Twp. Bd. of Educ., 2006 WL 827791, 2006 U.S. Dist. LEXIS 22305 (D.N.J. Mar. 30, 2006).

Id. at 772.

Additionally, the court in I.H. explained that requiring enrollment as a prerequisite to obtaining an IEP contravenes the "remedial nature" of the IDEA. Id. at 773. In support of this conclusion, the court pointed to cases cited by the student's guardian:

> Plaintiff points to several cases, although none binding upon us, supporting his contention that as a resident student within the jurisdiction of the Defendant School District, he is permitted to request, and entitled to receive, an IEP without re-enrolling. See James v. Upper Arlington City Sch. Dist., 228 F.3d 764, 768 (6th Cir.2000) ("To hold otherwise would allow the school to slough off any response to its duty until the parents either performed the futile act of enrolling their son for

> one day and then withdrawing him as soon as the IEP was complete, or worse, leaving the child in an arguably inadequate program *773 for a year just to re-establish his legal rights."); A.Z. on behalf of M.Z. v. Mahwah Twp. Bd. of Educ., 2006 WL 827791, 2006 U.S. Dist. LEXIS 22305 (D.N.J. Mar. 30, 2006) ("It would strain credulity to imagine that the legislature intended that parents of a disabled child would enroll that child in a school without a program in place to deal with disabilities that the district has already diagnosed, particularly, where, as here, the parents' disagreement with the previous IEP drove them to remove the child from the public school."); see also Moorestown, 811 F.Supp.2d at 1069 ("[W]here parents request reevaluations of their child for purposes of having an offer of a FAPE made for him, and the child is domiciled in the district, the school district must comply." (emphasis added)).

Id. at 772-73.

North Penn urges the Court not to extend the holding of I.H. to this case because I.H. did not deal with a 1306 student. (Doc. No. 13 at 3.) But the Court is not persuaded by North Penn's argument. The express purpose of the IDEA is to "ensure that all children with disabilities have available to them a free appropriate education that emphasizes special education and related services designed to meet their unique needs." Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 244 (2009) (citing Section 1400(d)(1)(A)). Towards that end, the court in I.H. noted that, given the facts presented, requiring enrollment as a prerequisite for an IEP was at odds with the IDEA. I.H., 842 F. Supp. 2d at 773.

Similarly, in a case involving a 1306 student, requiring actual residency as a prerequisite for an IEP is an anathema to the Act's remedial purpose. Here, North Penn is not Student's current Local Education Agency, or LEA. But if Magellan cuts funding for Student's Melmark School RTF placement on December 24, 2018, Student will move to Parent's home in the North Penn School District, at which point North Penn will regain LEA status over Student.

During the hiatus, Parent submits that North Penn's position on this move will thrust Student into legal limbo, even though North Penn contends that the move is harmless because the district will treat him like a transfer student. That is, North Penn will provide Student with services

comparable to those described in the IEP developed by Marple-Newton until it convenes an IEP meeting to develop a new IEP or officially adopts the Marple-Newton IEP. See § 1414(d)(2)(C)(i)(I). But employing this transfer policy is not sufficient to keep Student out of "legal limbo." Student was placed at the Melmark RTF by a third-party agency, and that residential placement is not part of the Marple-Newton IEP that North Penn will use until it can convene an IEP meeting. This means that Student may not have a residential placement—that Parent adamantly believes he needs—from December 24, 2018 until the date on which North Penn convenes an IEP meeting and develops a new special education programming for Student. More time will pass if North Penn again decides to deny Student a residential placement IEP and Parent challenges this decision through a due process claim. These delays could leave Student in an uncertain position for weeks and would restrict Student's guaranteed right to a free appropriate public education.

North Penn's argument is unconvincing for another reason—a Pennsylvania Special Education Hearing Officer has already applied <u>I.H.</u> to a 1306 student. See <u>In re: G.A., a Student in the Colonial School District</u>, ODR File No. 21018-1819AS (August 22, 2018). In that case, a third-party agency placed the student in a residential treatment facility outside the Colonial School District, the district in which his parents resided. <u>Id.</u> Then, Magellan Behavioral Health of Pennsylvania threatened to stop funding the student's residential placement. <u>Id.</u> In anticipation of the student's move back to the parents' home, they asked Colonial School District to provide the student with a residential placement IEP. <u>Id.</u> The school district refused, and in response, the parents filed a due process complaint. <u>Id.</u> In a Pre-Hearing Order dated August 22, 2018, the Hearing Officer applied the reasoning of <u>I.H.</u> and held that, in limited circumstances, a resident

15

school district may be obligated to develop an IEP even though it has no obligation to provide a FAPE. Id. The Hearing Officer reasoned:

> The instant matter is not analogous to the I.H. case. The most notable difference is the means by which the student was placed outside the resident district. There was no disagreement that sparked the RTF placement. Rather, a third party placed the Student into the RTF. Even so, the similarities are striking. In both cases, the families are asking a resident district for a contingent IEP that may become operational some time in the future. In both cases, the resident districts could immediately become responsible for the provision of the FAPE.
>
> The logic of the I.H. case keeps families out of legal limbo, protects students who face imminent transfer back into a resident district, and enable resident districts to plan for a student's return without assuming a FAPE obligation to the Student.

Id. Consequently, the Hearing Officer found that Colonial School District, the 1306 student's resident district, was a proper party to file the claim against and that the student's parents had standing to challenge the district refusal to give student a residential placement IEP. Id.

Here, North Penn argues that it is under no obligation to provide Student with a FAPE through a contingent IEP because, as Student's resident district, it is not Student's current LEA. But this position is contrary to the remedial nature of the IDEA and ignores the distinction between a FAPE and an IEP, as articulated in I.H. Thus, applying the reasoning from I.H. and considering the purpose of the IDEA, the Court finds that the Hearing Officer in this case erred in holding that (1) the case was not ripe, and (2) North Penn School District was not the proper party. (See Doc. No. 10 at 17-18.) In limited circumstances, such as those arising in this case, the resident school district is obligated to provide a 1306 student with a contingent IEP even though it has no obligation to provide Student with a FAPE. Consequently, the matter is ripe and North Penn is the proper party to file the due process claim against.

As noted above, the Hearing Officer did not reach the question of whether North Penn's decision to refuse Student an IEP with a residential placement violated the IDEA and Section 504

of the Rehabilitation Act of 1973 because she held that North Penn had no obligation to offer Student a contingent IEP. Because the Court has found this question ripe for review and that North Penn should provide Student a contingent IEP, the Hearing Officer must address North Penn's decision to deny Student a residential placement IEP on remand. Given the evident need of Student to be afforded an adequate education that complies with state and federal law, the Hearing Officer should consider this case on an expedited basis.

V.  **CONCLUSION**

Accordingly, for the foregoing reasons, the Court will grant Parent's Motion for Judgment on the Joint Stipulated Record (Doc. No. 12), deny North Penn's Motion for Judgment on the Joint Stipulated Record (Doc. No. 11), and remand the matter to the Pennsylvania Department of Education, Office for Dispute Resolution, for expedited consideration consistent with this Opinion. An appropriate Order follows.